UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THOMAS S.[1],

|  |  |
|---|---|
| Plaintiff, | 19-CV-1663-FPG |
| v. | DECISION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**INTRODUCTION**

On June 5, 2018, Plaintiff filed an application for disability insurance benefits ("DIB") alleging disability beginning on August 12, 2017.  Tr.[2] 120.  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 17, 2019, Plaintiff appeared with is counsel Taylor Schubauer, Esq., before the ALJ, Bryce Baird.  Tr. 33-104.  On August 15, 2019, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act (the "Act").  Tr. 9-32.  On October 17, 2019, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  Tr. 1-6.  Subsequently, Plaintiff brought this action pursuant to Title II of the Act seeking review of the final decision of the Commissioner which denied his application for DIB.[3]  ECF No. 1.  Presently before the Court are the parties' competing motions for judgment on the pleadings.  ECF Nos. 7, 17.  For the reasons set forth below, Plaintiff's motion for judgment

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by his first name and last initial.

[2] "Tr." refers to the administrative record in the matter.  ECF No. 8.

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

on the pleadings is DENIED, the Commissioner's motion for judgment on the pleadings is

GRANTED, and the Commissioner's decision is AFFIRMED.

## LEGAL STANDARD

### I.   District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is

limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault*

*v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the

administrative record confirms that "there is substantial evidence supporting the Commissioner's

decision," and "the Commissioner applied the correct legal standard," the Commissioner's

determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007),

*cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

### II.   Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is

disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial

gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the

ALJ proceeds to Step Two and determines whether the claimant has an impairment, or

combination of impairments, that is "severe" within the meaning of the Act, meaning that it

imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §

404.1520(c). If the claimant does not have a severe impairment or combination of impairments,

the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

The ALJ found Plaintiff met the insured status requirements through December 31, 2022, and Plaintiff had not engaged in substantial gainful activity since August 12, 2017. Tr. 14. At Step Two, the ALJ found that Plaintiff had the severe impairments of: PTSD; mild traumatic brain

injury; obesity; lumbar degenerative disc disorder; ADHD; and migraines. *Id.* At Step Three of the analysis, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 15. The ALJ then proceeded to determine that Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567(b). Tr. 18. The ALJ determined Plaintiff:

> can lift and carry on occasion up to 20 pounds and frequently up to 10 pounds. He can sit for up to six hours in an eight-hour workday, and he can stand/walk for up to six hours in an eight-hour workday. He can occasionally climb ramps and stairs, but he cannot climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, and crouch, and he can never crawl. He is limited to environments in which there is no exposure to excessive vibration, and no exposure to hazards such as unprotected heights or moving machinery. He is limited to noise environments no greater than loud, (as that is term is defined in the Selected Characteristics of Occupations, an Appendix to the Dictionary of Occupational Titles). He can have no exposure to bright or flashing lights. [Plaintiff] is limited to simple routine tasks that can be learned after a short demonstration or within 30 days. The work must allow him to be off-task approximately 5% of the workday in addition to regularly scheduled breaks. The work cannot involve more than simple work related decisions and cannot require travel to unfamiliar places. [Plaintiff] can have no work interaction with the public, and up to occasional interaction with coworkers. He cannot perform teamwork, such as on a production line. [Plaintiff] can perform work that requires doing the same tasks every day with little variation in location, hours, or tasks. The work can be subject to no more than occasional supervision.

*Id.* At Step Four of the sequential analysis, the ALJ determined that Plaintiff was unable to perform his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. Tr. 26-28. Specifically, the ALJ found that Plaintiff could work as an assembler of small products and a folder. Tr. 27-28.

## II.   Analysis

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ's finding that Plaintiff could perform work that must allow him to be off-task 5% of the workday was unsupported by substantial evidence. ECF No. 7

at 21-24.  Second, Plaintiff argues that the ALJ failed to assess his ability to perform work on a "regular and continuing basis" in the national economy.  *Id.* at 24-26.  Third and lastly, Plaintiff argues that the ALJ mischaracterized his activities of daily living in assessing his subjective complaints and in discounting the opinions of his treating provider.  *Id.* at 27-29.  Plaintiff filed a reply in which he reiterated his original arguments.  ECF No. 18.  In response, the Commissioner argues the ALJ properly evaluated Plaintiff's subjective complaints of limitations, his migraine headaches, as well as his ability to concentrate, persist, or maintain pace.  ECF No. 17 at 15-26.  For the reasons that follow, the Court disagrees with Plaintiff and affirms the Commissioner's decision.

A.     **Off-Task Limitation**

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1)[4].  The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do provided by any medical sources.  *Id.* §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity.  *Id.* §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c).

---

[4] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844.  These rules were effective as of March 27, 2017.  Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017.  *See, e.g.*, 20 C.F.R. § 404.1527 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. § 404.1520c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process).  Here, Plaintiff filed his claim after March 27, 2017, thus, the 2017 revisions apply to this case.

Plaintiff argues that the ALJ erred in his determination that Plaintiff would be off-task 5% of the workday because no medical opinion of record supported the ALJ's finding. ECF No. 7 at 21-24. He further argues that "instead of arbitrarily finding that Plaintiff would be off-task 5% of the workday, as opposed to any other amount of time, the ALJ should have upheld his affirmative duty to develop the record." *Id.* at 24. Here, the Court finds that ALJ did not err in concluding that Plaintiff could be off-task 5% of the workday because substantial evidence of the record supported his determination. Further, the ALJ was not obligated to further develop the record.

In support of his argument, Plaintiff relies on *Annis v. Comm'r of Soc. Sec.*, No. 18-CV-1276, 2019 WL 6875231, at *10-11 (W.D.N.Y. Dec. 17, 2019). However, the case here is distinguishable. ECF No. 7 at 21-22. The Court in *Annis* concluded that the ALJ failed to follow the treating physician rule under 20 C.F.R. § 404.1527(c)(2) in assessing the opinion of a treating source who opined that plaintiff would be off-task more than 20% of the workday. *Annis*, 2019 WL 6875231, at *9. To be sure, no medical source in the present case opined that Plaintiff would be off-task 5% of the workday; however, under the regulations applicable in Plaintiff's case, the ALJ would not be obligated to defer to such an opined limitation. An ALJ "will not defer or give any specific evidentiary weight, including controlling weight to any medical opinion(s) . . . including those from [plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a); *see Coleman v. Comm'r Soc. Sec.*, 335 F. Supp.3d 389, 400-01 (W.D.N.Y. 2018) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (where the ALJ properly explained the bases for the claimant's mental limitations, "the assessed RFC [did] not [need to] 'perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision'")). Therefore, the ALJ did not commit remandable error in making a determination that Plaintiff would be off-task 5% of the workday where the limitation did not correspond to a specific medical source opinion.

Additionally, as illustrated by the Second Circuit in *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016), "the fact that the ALJ assigned a particular percentage range (0–10%) to illustrate [plaintiff's] limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence." Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Here, substantial evidence in the record supported the ALJ's determination that Plaintiff would be off-task 5% of the workday. As in *Johnson*, the ALJ here relied on the record as a whole in making his determination, particularly the opinion of a consultative examiner and other evidence, which reflected Plaintiff's ability to maintain employment despite the potential for him to be off-task more than accounted for in typical breaks. *See Johnson*, 669 F. App'x at 47.

Plaintiff argues the opinions of the State Agency medical consultant and consultative examiners "are not substantial support" for the ALJ's 5% off-task determination, and that the opinion of his treating social worker supports greater limitations in the area of attention and concentration. ECF No. 7 at 22. As an initial matter, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault*, 683 F.3d at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review); *Wojciechowski v. Colvin*, 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the

plaintiff's position).  In addition, Second Circuit caselaw states that a consultative examiner's opinion may provide substantial evidence supporting the ALJ's determination. *See, e.g., Lamond v. Astrue*, 440 F. App'x 17, 21-22 (2d Cir. 2011); *Netter v. Astrue*, 272 F. App'x 54, 55-56 (2d Cir. 2008) (report of a consultative physician may override opinion of a treating physician, provided it is supported by substantial evidence in the record); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (report of a consultative physician may constitute substantial evidence to contradict the opinion of a treating physician).

Here, the ALJ properly considered the opinion evidence in the record, as well as the other evidence, in making his RFC determination.  Specifically, consultative examiner Susan Santarpia, Ph.D., opined that Plaintiff was able to understand, remember, and apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions within normal limits.  Tr. 342.  The ALJ found Dr. Santarpia's opinion "somewhat persuasive." Tr. 25.  The ALJ also determined that Plaintiff had "moderate" limitations in his ability to concentrate, persist, or maintain pace; however, he noted that Plaintiff had intact memory on examination and "generally unremarkable mental status examinations," and, therefore, had "no greater than moderate limitations in any of his mental work related abilities." Tr. 25.

On examination, Dr. Santarpia observed Plaintiff being cooperative and having adequate manner of relating and overall presentation.  Tr. 340.  Plaintiff was well groomed and had appropriate eye contact.  *Id.*  Further, his thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia; his affect was of full range and appropriate

in speech and thought; his mood was euthymic; his sensorium was clear; he was oriented; his attention and concentration were intact; his recent and remote memory were intact; his cognitive functioning was estimated to be average; and his insight and judgment were fair. Tr. 341. Plaintiff informed Dr. Santarpia that he could care for his own personal hygiene, cook, clean, do laundry, shop, and manage his own money. *Id.* Dr. Santarpia further indicated that Plaintiff socialized with friends and family, spent his time with his children, and endorsed watching TV, fishing, shooting, and hunting. Tr. 341-32.

The Court finds that the ALJ relied on the record as a whole in formulating Plaintiff's RFC. The ALJ accounted for Plaintiff's "PTSD and ADHD symptoms" with restrictions to simple routine tasks allowing for 5% off-task behavior and additional social limitations. Tr. 20, 23-24. To be sure, treating social worker, Lesley Auria, indicated that Plaintiff was unable to maintain attention for extended periods of two-hour segments, complete a normal workday or workweek without interruptions from psychologically based symptoms, and perform at a consistent pace. Tr. 1291-92. The ALJ considered Ms. Auria's opinion and concluded that the limitations provided therein were inconsistent with evidence in the record, including "largely normal mental status examinations" and Plaintiff's ability to perform various activities such as "building items," childcare, and volunteering. Tr. 24.

Plaintiff argues that the ALJ improperly discounted Ms. Auria's opinion based on his ability to perform activities of daily living because there was no connection between his ability to perform daily activities and the ability to perform work on a regular and continuing basis. ECF No. 7 at 28-30. Contrary to Plaintiff's argument, however, the ALJ properly considered his activities as one factor in his overall assessment of Ms. Auria's opinion and of Plaintiff's RFC. *See, e.g., Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (ALJ properly considered plaintiff's

ability "to engage in moderately complex tasks" such as childcare); *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) ("The ALJ also relied on Cichocki's Daily Activities Questionnaire on which she indicated that she performed numerous daily tasks, such as walking her dogs and cleaning her house, that are consistent with a residual capacity to perform light work."); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) ("the ALJ correctly noted that Poupore was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer").   Despite alleged problems concentrating, Plaintiff acknowledged that he did woodworking projects and other small projects during the day, including building things for others. Tr. 69-71, 79-80.  He testified that he took annual trips out of state to visit his friends from the Army, and that he could drive four hours at a time during those trips.  Tr. 77.  Plaintiff further testified that he went hunting three times earlier in the year even though he did not "trust [him]self" to work due to problems controlling his anger.  Tr. 89-91, 93.  He indicated that he was working with a program to help other veterans and himself deal with PTSD.  Tr. 80.  Plaintiff also testified that he could work a job where he did not have to interact with others, but that there was "nothing around."  Tr. 88-89.  He also said that he cleaned daily, shopped twice a week, did laundry and cooking two to four times a week, and performed childcare five to seven days a week.  Tr. 336. Ms. Auria also noted that Plaintiff was taking care of his children while his wife was at work.  Tr. 24, 430.  Therefore, the ALJ did not err in considering Plaintiff's activities as one factor in his overall assessment of Ms. Auria's opinion and Plaintiff's RFC determination.

Additionally, the ALJ was not obligated to further develop the record on this matter. "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional

10

information in advance of rejecting a benefits claim." *Swiantek* v. *Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (quoting *Rosa*, 168 F.3d at 79 n.5); *see also Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (ALJ not required to develop record where evidence presented is adequate for the ALJ to make a determination).

Overall, although the ALJ's 5% off-task limitation did not directly correspond to a medical opinion in the record, the ALJ's determination was supported by substantial evidence.   In concluding that Plaintiff would be off-task 5% of the workday, the ALJ relied on the record as a whole, including medical opinion evidence, objective mental status examinations, and Plaintiff's testimony concerning his daily activities.

### B.    Migraine Headaches and Ability to Maintain Attendance

Plaintiff argues that the ALJ's determination that he was able to perform jobs in the national economy on a "regular and continuing basis" was not supported by substantial evidence because his migraines would render him unable to work three days per month. ECF No. 7 at 24-26.  As argued by the Commissioner, Plaintiff's argument proceeds on the theory that the ALJ found Plaintiff's testimony regarding his migraines fully consistent with the record. ECF No. 17 at 20. However, the ALJ noted that Plaintiff's migraine-related complaints were contradicted by record evidence, such as his ability to continue serving in the military despite a greater number of headaches each month and other evidence in the record outlined below.

The ALJ determined that the "alleged frequency and severity of [Plaintiff's] migraines, [. . .] would not prevent sustained work activity within the above residual functional capacity, as [Plaintiff] was working at substantial gainful activity [prior to his onset date], and subsequent records after the alleged onset date do not reflect any sustained increase in frequency or severity of [Plaintiff's] reported migraines." Tr. 20. Indeed, at the June 2019 hearing, Plaintiff testified

11

that he had been experiencing migraine headaches since 2013.  Tr. 72.  He also stated that there was an 18-month period from 2016 to 2017 when he was experiencing two to three migraine headaches a week.  Tr. 73.  During at least some of this period, Plaintiff continued to serve in the military.  Tr. 41-42.  Furthermore, when Plaintiff was discharged from the military, he was discharged based on a non-medical reason.  Tr. 43-45.

Additionally, Plaintiff informed a provider in August 2018 that he was experiencing about one migraine a month.  Tr. 100, 335.  Furthermore, two neurology specialists characterized his migraines as "well controlled" when he was receiving Botox injections.  Tr. 1843.  To be sure, Plaintiff had difficulty receiving Botox injections following his discharge from the Army. Tr. 461.  In December 2018, a provider noted that Plaintiff had one to two "severe headaches per week without the treatment of Botox injections." *Id.*  The provider noted that "community care Botox injections issue has finally been resolved."  *Id.*  The record contains no additional information regarding migraines after December 2018.

Lastly, the opinion evidence supports the ALJ's determination that Plaintiff could maintain attendance despite migraine headaches.  In August 2018, the consultative examiner opined that Plaintiff had only a moderate limitation in performing the physical activities of work despite a diagnosis of migraines.  Tr. 338.  Similarly, a reviewing physician opined that Plaintiff's migraines would not prevent him from performing a range of medium work as long as he could avoid concentrated exposure to noise and vibration.  Tr. 113-14.  Although the ALJ restricted Plaintiff to light, rather than medium work, the ALJ included the reviewing physician's environmental restrictions in Plaintiff's RFC.  Tr. 18.  The ALJ also found that Plaintiff needed to avoid bright or flashing lights, which was consistent with his migraine-related complaints of photophobia.  Tr. 18, 20, 399, 459.

Overall, the ALJ properly considered Plaintiff's limitations related to migraines in assessing his RFC. Substantial evidence supported the ALJ's determination that despite complaints of migraines, Plaintiff was capable of maintaining attendance requirements of work.

**C.      Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ mischaracterized Plaintiff's activities of daily living in assessing his subjective complaints. ECF No. 7 at 27-30. For the reasons outlined below, the ALJ properly considered Plaintiff's activities as one factor in his overall assessment of Plaintiff's subjective complaints.

The ALJ must employ a two-step analysis to evaluate a claimant's reported symptoms. *See* 20 C.F.R. § 404.1529. The ALJ must first evaluate the medical signs or laboratory findings showing that the claimant has a medically determinable impairment(s) that could reasonably be expected to produce his symptoms, such as pain. *Id.* Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms so that the ALJ can determine how his symptoms limit his capacity for work. *Id.* In evaluating the intensity and persistence of the symptoms, the ALJ considers all of the available evidence from the claimant's medical sources and nonmedical sources about how his symptoms affect him. *Id.*

At this second step, the ALJ must consider: (1) claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

13

Here, the ALJ properly considered Plaintiff's daily activities as one factor in his assessment of Plaintiff's subjective complaints.  Tr. 19, 21, 26.  Indeed, the regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.  20 C.F.R. § 404.1529(c)(3)(i).  In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence."  *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018) (citing *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014)).  This is so because "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record." *Id.*

Plaintiff argues that the ALJ erred in his consideration of Plaintiff's activities when he assessed Plaintiff's subjective complaints because none of Plaintiff's daily activities are inconsistent with his complaints.  ECF No. 7 at 29.  As already stated herein, it is not enough for Plaintiff to argue that the evidence in the record could support his position, instead, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault,* 683 F.3d at 448.  Here, Plaintiff fails to show that no reasonable factfinder could have reached the ALJ's conclusion.

The ALJ determined that Plaintiff's testimony regarding the limiting effects of his impairments were inconsistent with his activities of daily living.  Tr. 26.  One such activity was his ability to care for his children while his wife worked.  Tr. 19, 22-24, 26. The ALJ also relied on Plaintiff's reports to providers that he was able to do woodworking, volunteer, have other hobbies, and care for his own personal needs without assistance. *See, e.g.*, *Roman v. Colvin*, 278

F. Supp. 3d 671, 677 (W.D.N.Y. 2017) (ALJ properly considered plaintiff's ability to care for children, prepare meals with help, do laundry, do light housework and grocery shop in assessing plaintiff's subjective complaints); *Raftis v. Comm'r of Soc. Sec.,* No. 5:17-CV-0514, 2018 WL 1738745, at *9 (N.D.N.Y. Apr. 6, 2018) (ALJ properly noted plaintiff's ability to care for two small children as indication that plaintiff's testimony regarding limiting effects of her symptoms was not as severe as alleged). In addition to Plaintiff's activities of daily living, the ALJ considered Plaintiff's treatment, effectiveness of medication, and objective observations contained in the record. Tr. 19-26.

Furthermore, the ALJ did not impermissibly equate the ability to parent with the ability to perform substantial gainful employment. In fact, the ALJ stated that "activities of daily living are not conclusive of an individual's residual functional capacity, the breadth of the [Plaintiff's] activities suggest that he is capable of sustained work activity within the above residual functional capacity." Tr. 26. The ALJ properly considered Plaintiff's ability to care for his children as one example of his activities of daily living, which the ALJ determined to be inconsistent with Plaintiff's alleged limitations due to symptoms of his impairments.

Overall, although Plaintiff's RFC included a 5% off-task limitation that did not mirror a medical opinion, the ALJ's overall RFC determination was, nonetheless, supported by substantial evidence in the record. The ALJ properly assessed Plaintiff's ability to perform work on a "regular and continuing basis" in the national economy despite Plaintiff's complaints of migraine headaches and considered Plaintiff's activities of daily living in assessing his subjective complaints and opinion evidence. Because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, Plaintiff has failed to meet his burden to demonstrate that he had a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill,*

740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (plaintiff failed his duty to prove a more restrictive RFC).   Therefore, for the reasons stated above, the Court finds that the RFC determination was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is DENIED, and the Commissioner's motion for judgment on the pleadings (ECF No. 17) is GRANTED.   The Commissioner's decision is hereby AFFIRMED.   The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: April 7, 2021
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

16